# WILLIAM B. CLAPP *et al.*

*v.*

# GEORGE W. NOBLE.

1. LANDLORD AND TENANT—*rent to be paid on a holding over.* Where a tenant holds over after the expiration of his term, with the implied assent of the lessor, it will be upon an implied undertaking, or liability, to pay rent thereafter, on the same terms, as to amount and times of payment, as in the original lease.

2. SAME—*rent payable when the holding over is against the landlord's will.* Where a tenant holds over in defiance of the landlord, and after notice to quit, he will be chargeable with the same rent fixed in the original lease. If the rental value has increased, the obligors in an appeal bond may be held for the excess, on their undertaking to pay all damages and loss the landlord may establish.

3. EVIDENCE—*in suit on appeal bond given in forcible detainer.* In an action on an appeal bond given in an action of forcible detainer, conditioned to pay all rent due and to become due, the original lease is proper evidence to show what rent should be paid.

4. SAME — *to prove rental value of vacant lot.* In an action on an appeal bond in a forcible detainer case, a witness was called, and testified to what rent he paid for a lot about half the size of the one involved in the detainer suit, and adjoining it, he not knowing what others paid for such property, or its rental value: *Held,* that while the rent paid by him did not conclude the parties, yet it was a circumstance which might go to the jury, as tending, though in a slight degree, to establish the rental value.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellants.

Messrs. McCAGG, CULVER & BUTLER, for the appellee,

Mr. JUSTICE BREESE delivered the opinion of the Court :

This was an action of debt, brought to the circuit court of Cook county, by George W. Noble, plaintiff, and against James M. Nixon, William B. Clapp and William B. Langley, defendants, on three appeal bonds executed by Nixon, as principal, and the others, as sureties, under the following circumstances:

On May 8, 1872, Noble, being the owner of some lots of vacant ground in Chicago, leased the same, on that day, to Nixon, to be used by him as circus grounds, for one month, at the rent of one hundred dollars per week. Nixon went into possession, and, on June 7, 1872, Noble served a notice on him to quit, and surrender the possession to his agent, one Lull. This, on some pretense or other, Nixon refused to do, whereupon Noble commenced proceedings against him for forcible detainer, and recovered a judgment for restitution of the premises. From this judgment Nixon appealed to the circuit court, and this was the origin of the first bond. While the cause was in the circuit court, by an order of that court Nixon was required to give an additional bond, which was done, and this was the origin of the second bond. From the judgment of the circuit court Nixon took an appeal to this court, and this was the occasion of the third bond, on all which Clapp and Langley were sureties. The judgment was affirmed in this court. During all this time, Nixon remained in possession, not abandoning the premises until some time late in September or early in October, 1873, holding the same about sixty-nine weeks.

The bonds, some one or more of them, were conditioned that Nixon should pay all rents then due, or to become due, from the commencement of the suit until the final determination thereof, and all damages and loss which Noble might sustain by reason of withholding the possession of the premises, and by reason of any injury thereby during the withholding, together with the costs.

The defendants pleaded *non est factum*, and there was a trial by jury, which resulted in a verdict for the plaintiff for

four thousand eight hundred dollars. A motion for a new trial having been denied, judgment was entered on the verdict. The defendants Clapp and Langley bring the record here by appeal, and assign various errors, all which we have considered.

The principal question on the trial of the cause below was, and it is here, was Nixon liable to pay for the whole time per week the rent stipulated by the written lease? The theory of the plaintiff is, Nixon was so bound, whilst the defendants contend that the notice to Nixon to quit, at the end of his term of two weeks, terminated the relation of landlord and tenant theretofore existing, and for the subsequent occupancy he could only be charged with the reasonable rental value, without regard to the lease.

These questions are raised, and properly, on the objection of defendants to the introduction of the lease in evidence. The plaintiff claimed the lease was conclusive as to the measure of damages he ought to recover. upon the principle, where a tenant, under a lease for a stated period, holds over, it is upon an implied undertaking, or liability, as to rent and time of payment, similar to that created by the terms of the lease.

This is the rule where the tenant holds over with the implied assent of the lessor, as this court held in *Prickett* v. *Ritter*, 16 Ill. 96, *McKinney* v. *Peck*, 28 ib. 174, *Otto et al.* v. *Jackson*, 35 ib. 349, and in other cases.

Should the rule be different where the holding over is after a notice to quit the premises, and is against the will of the lessor? We do not see why the rule should be different where there is a holding over in defiance of the landlord, and after a notice to quit. The presumption in either case is, the tenant is satisfied with the terms, and will take the risk by holding over. It may be said, the value of the rent might greatly increase at and after the termination of the lease. In such case, the obligors would be held on their undertaking to pay all damages and loss the landlord might establish.

Appellants have bound themselves to pay all rents due at the time the bonds were executed, and all rents to become

due, from the commencement of the suit until the final determination thereof, and all damages and loss which the lessor might sustain by withholding the possession of the premises. What were the rents, then, in the contemplation of the parties? What rent was due, and what to become due? The answer must be, such rents as were stipulated by the parties. Rental value is not named, but rent, and the only rent agreed upon by the parties, viz: one hundred dollars per week. It was, presumptively, this same stipulated rent that would become due—that would accrue while the suit was pending and the litigation progressing. There could be no other in the contemplation of the parties. The lease was properly admitted to show what the rent was as agreed by the parties. Although it was not signed by appellants, it was the inducement to their undertaking, and a proper instrument of evidence, tending to show the amount of rent they had obligated themselves to pay on a certain contingency, which had happened.

Exception is taken to the admission of the testimony of John L. Frazier, a witness called by plaintiff—to that part of it wherein he stated, against the objection of defendants, what rent he paid for a lot about half the size of the one in question, and adjoining it. This witness had stated he did not know the rental value of these premises, nor what rent others, besides his own house, were paying for similar property. It may be admitted, the rent his firm paid did not conclude the defendants, yet it was a circumstance which might go to the jury, as tending, though in a slight degree, to establish the rental value of an adjoining lot. There was much testimony to this point, and that of Frazier could not, materially, have influenced the finding of the jury. That body must have placed the greatest reliance upon the written agreement of Nixon to pay one hundred dollars per week for the use of the premises. That agreement afforded strong evidence that Nixon deemed the premises, at that time, worth one hundred dollars per week, and his continuing to hold them, in defiance of his landlord, is some evidence he did not suppose he was losing anything by continuing subject to the payment of that rent.

Had he thought otherwise, there can scarcely be a doubt he would have surrendered the possession after notice. His conduct was a fair subject for the consideration of the jury.

There was much and conflicting testimony heard. We have examined and considered it, and we can not say it preponderates against the verdict. We can only say, considering the amount of the verdict, the presumption that Nixon chose to hold the premises on the stipulated terms has been partially overcome. There is manifest justice in requiring the strongest proof to overcome such a presumption. Although, technically, the notice to quit may be regarded as terminating a tenancy, the fact still exists that the lessee remains in the occupancy, and does not choose to sever the relation. It is just and proper, then, that he should be held amenable to all the presumptions that can be raised in such a case.

As to the instructions, we see no objection to the manner in which they were disposed of by the court.

We see no error in the record, and believe justice has been done, and the judgment ought to be affirmed.

*Judgment affirmed.*